UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDREW A. ADORJAN,

        Plaintiff,

v.                                  Case No.  3:20-cv-1280-BJD-JBT

DUVAL COUNTY, FLORIDA, et al.,

        Defendants.

_____

## ORDER

### I. Status

Plaintiff Andrew Adorjan, an inmate of the Florida penal system, is proceeding pro se on an amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 26, Am. Compl.). Plaintiff sues Defendants for deliberate indifference to a serious medical need, which allegedly occurred while Plaintiff was a pretrial detainee at the Duval County Detention Center ("DCDC"). Defendant Armor Correctional Health Services, Inc. ("Armor") moves to dismiss the Amended Complaint (Doc. 30), and Plaintiff has filed a response in opposition (Doc. 31) with exhibits (Doc. 31-1 through 31-12). Thus, the Motion is ripe for review.

### II. Plaintiff's Allegations

Although not a model of organization, Plaintiff alleges that Defendants denied or delayed medical treatment for a broken wrist, which amounted to

1

deliberate indifference to a serious medical need, in violation of his rights under the Fourteenth Amendment. See generally Am. Compl. As Defendants, Plaintiff names Duval County, Florida, Sheriff Mike Williams of the Jacksonville Sheriff's Office, and Armor. Id. at 5.[1] Plaintiff states that Duval County is the governmental entity that operates the DCDC and oversees its employees and contracted service providers; Sheriff Williams supervises the DCDC, its employees, and its contracted service providers; and Armor is the private entity that contracts with Duval County to provide medical care to inmates at the DCDC. Id.

Plaintiff was arrested and booked into the DCDC on December 6, 2019. Id. at 9. Before his arrest, Plaintiff fell and broke his right wrist, and an emergency room (E.R.) doctor placed his right hand and forearm in a temporary splint. Id. Plaintiff states that he was sent to the Shands Hospital E.R. (apparently after his arrest, though this is unclear), where he was x-rayed, examined, and his splint was replaced. Id. According to Plaintiff, on December 7, 2019, he returned to the DCDC from Shands Hospital with instructions from the E.R. doctor that Plaintiff should obtain an MRI and be treated by an orthopedic surgeon within three days. Id. at 6, 9. Plaintiff also states that the "E.R. lead doctor" from another hospital, Baptist Hospital, said he would need

---

[1] Citations to the Amended Complaint will refer to the page number designated by CM/ECF.

2

"corrective alignment" and to "make a[n] appointment." Id. at 13.

Plaintiff states that three days came and went without him seeing an orthopedic surgeon. Id. at 6, 7. He asserts that Armor was aware of his injury and of his need to see an orthopedic surgeon, but Armor failed to provide even "minimal treatment" for his broken wrist. Id. at 9. By not carrying out the E.R. doctor's prescribed treatment, Plaintiff alleges that Armor chose an "easier and less efficacious course of action" under a custom or policy "that most governmental entities and corporations practice": "cutting costs to save money by any means." Id. at 10. Plaintiff suggests that this cost-cutting policy flowed from Duval County and Sheriff Williams, and that Duval County and Sheriff Williams expected Armor to practice the same cost-cutting policy. See id. Thus, Plaintiff alleges, Armor failed to treat his broken right wrist because it would be too expensive. Id.

Plaintiff also states that he was "unnecessarily x-rayed" at the DCDC clinic on December 16, 2019, id., but this did nothing to treat his wrist, id. at 11. Plaintiff adds that on December 20, 2019, he saw an Armor physician, who told Plaintiff that a specialist would see him, but that the Armor physician performed no examination at that time. Id. at 11–12.

Plaintiff asserts that on an unspecified date, he slipped in a puddle of water leaking from a plumber's closet outside his cell, and that he reflexively caught himself using his right hand. Id. at 12. As a result, Plaintiff states that

3

he over-extended his right hand and ended up in severe pain, fearing he had aggravated his broken wrist. See id. He went to the DCDC clinic and was seen by a triage nurse, who recorded Plaintiff's temperature and blood pressure, told Plaintiff he "would eventually be seen," and said he was okay to return to his cell. Id. Plaintiff contends that medical staff "fail[ed] to respond adequately to a possible problem" and that they should have had him examined "by a qualified medical staff personnel, i.e., 'a doctor,'" and not an "unqualified triage nurse." Id. at 13. Plaintiff also contends that he should have been taken to the E.R. for x-rays and examination. Id.

Plaintiff states that he did not see an orthopedist until January 17, 2020 – five weeks after he entered the DCDC – when he was taken to the Shands Inmate Clinic. Id. at 14–15. According to Plaintiff, the orthopedist told him he "should have already been placed in traction to properly align [the] broken bone" and that Armor was supposed to have returned him to the hospital "so much sooner than today." Id. at 15. Plaintiff asserts that he still was not provided with needed treatment. Id.

As a result, Plaintiff says his right wrist did not heal properly. Id. at 15, 17. He states that he now has "a very deformed [and] dysfunctional" right hand and wrist, and that he has lost 50% of his normal mobility. Id. at 17. He also states that he has "on [and] off painful numbness in [his] last [two] fingers [and] thumb on [his] right hand," which makes it difficult for him to perform

4

daily tasks. Id. at 17–18. He alleges that he suffers from mental and emotional anguish as well. Id. at 18. As relief, Plaintiff seeks $250,000 to cover the expenses of medical treatment and $750,000 in compensatory damages for pain and suffering and lost wages. Id. at 19.

### III. The Parties' Arguments

Armor moves to dismiss the Amended Complaint for two reasons. See Motion to Dismiss at 2. First, Armor argues that the Amended Complaint is a "shotgun pleading" that relies on conclusory assertions and "buzzwords" instead of specific facts. Id. at 2, 3–4. Second, Armor argues that Plaintiff fails to state a claim for deliberate indifference to a serious medical need because he has not alleged facts showing more than negligence. Id. at 2, 4–6.[2]

Plaintiff opposes Armor's Motion to Dismiss. See Response. He maintains that the Amended Complaint sets forth specific, non-conclusory facts that establish Armor was subjectively aware of a serious medical need, i.e., his broken right wrist, and failed to treat it at all.

---

[2] To prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must show: "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009). To establish deliberate indifference, a plaintiff must prove (1) subjective knowledge of a risk of serious harm, (2) disregard of that risk, (3) by conduct that is more than gross negligence. Townsend v. Jefferson Cnty., Ala., 601 F.3d 1152, 1158 (11th Cir. 2010). "The defendants must have been 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' and then actually draw that inference." Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014) (quoting Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003)).

## IV. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397,

401 (11th Cir. 1986)). Moreover, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." Rehberger v. Henry Cnty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (quotations and citation omitted). Absent a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against a defendant.

## V. Shotgun Pleadings

Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense." Id.[3]

"The 'self-evident' purpose of these rules is 'to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading.'" Barmapov v. Amuial,

---

[3] The "notice pleading" standards that Rule 8(a) embodies are liberal. They do "not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim," but they do require "that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Roe, 253 F.3d at 683 (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

986 F.3d 1321, 1324 (11th Cir. 2021) (alteration omitted) (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015)). "These rules were also written for the benefit of the court, which must be able to determine 'which facts support which claims,' 'whether the plaintiff has stated any claims upon which relief can be granted,' and whether evidence introduced at trial is relevant." Id. "Complaints that violate either Rule 8(a) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" Weiland, 792 F.3d at 1320.

The problem with shotgun pleadings is that they "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (alterations adopted and internal quotation marks omitted). "Shotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the enemy, and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." Barmapov, 986 F.3d at 1324 (quotation marks and citation omitted).

The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings." Weiland, 792 F.3d at 1321. The first and "most common type … is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all

8

that came before and the last count to be a combination of the entire complaint." Id. The second and "next most common type … is a complaint … replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1321–22. The third type is a pleading that does "not separat[e] into a different count each cause of action or claim for relief." Id. at 1322–23. And the fourth type is a pleading that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id.

## VI.  Discussion

At first glance, Plaintiff's Amended Complaint might seem straightforward, but a closer look reveals its deficiencies. The Amended Complaint typifies the third and fourth types of shotgun pleadings identified in Weiland, but it has characteristics of the second type as well.

The Amended Complaint consists of several pages of undivided narrative, mixed in with legal conclusions and assertions, about the alleged denial or delay of treatment for Plaintiff's broken wrist in December 2019 and January 2020. Plaintiff fails to separate his allegations into numbered

9

paragraphs. See Fed. R. Civ. P. 10(b). Liberally reading the Amended Complaint, Plaintiff sues three Defendants (Duval County, Sheriff Williams, and Armor) under two potential theories of liability (deliberate indifference by denying treatment and/or deliberate indifference by delaying treatment) based on two occurrences (the alleged lack of treatment after Plaintiff arrived at DCDC and the alleged lack of treatment after Plaintiff slipped and fell in a puddle outside his cell). However, it is unclear whether Plaintiff intends to proceed on one theory or occurrence over another, or if he intends to proceed on all of them. If Plaintiff does intend to proceed on more than one transaction or occurrence, he fails to separate his allegations into discrete causes of action. See Fed. R. Civ. P. 10(b). In doing so, he fails to "separat[e] into a different count each cause of action or claim for relief." Weiland, 792 F.3d at 1322–23. At the same time, Plaintiff "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. at 1323. The result is that it is difficult for Defendants to frame a responsive pleading and for the Court to assess the sufficiency of the Amended Complaint.

To a lesser extent, the Amended Complaint also contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," id. at 1321–22, or as Armor calls them, "mere conclusions and 'buzz

words,'" Motion to Dismiss at 4. For example, Plaintiff alleges that Armor denied or delayed treatment for his broken wrist under a cost-cutting policy or custom which, he asserts, Duval County and Sheriff Williams promoted or enforced. Am. Compl. at 10, 11, 15–16. Based on the allegations, it is unclear as to which entity Plaintiff attributes the cost-cutting policy: Armor, Duval County, or Sheriff Williams. Moreover, merely alleging the existence of a cost-cutting policy is not enough to establish municipal or entity liability. See Weiland, 792 F.3d at 1328–29 (plaintiff's allegation that sheriff's office had "a policy of using internal affairs investigations to cover up the use of excessive force against mentally ill citizens," based only on the assertion itself and the defendants' conduct in the plaintiff's own case, did "not plausibly allege" that the sheriff's office had such a policy or custom).[4]

That Plaintiff is pro se does not relieve him of the obligation not to file a shotgun complaint. See Smith v. Mercer, 572 F. App'x 676, 678 (11th Cir. 2014)

---

[4] Generally speaking, supervisory officials and government entities are not liable under § 1983 for the acts or omissions of their subordinates based on a theory of respondeat superior or vicarious liability. See Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1047 (11th Cir. 2014); Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). Likewise, where a claim of deliberate medical indifference is brought against a private contractor based on its functional equivalence to a government entity, liability under § 1983 cannot be based on a theory of respondeat superior. Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (citation omitted). Instead, the plaintiff must show that the entity "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

While Armor argues that Plaintiff fails to sufficiently allege that its employees were deliberately indifferent to a serious medical need, Armor does not argue that Plaintiff fails to allege that Armor had a policy or custom that was the moving force behind Plaintiff's injury. Because Armor did not raise that argument, the Court does not consider it.

11

("Smith is not excused from following the court's rules of procedure simply because of his pro se status." (citing Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989))). Although a court liberally construes a pro se plaintiff's allegations, Haines v. Kerner, 404 U.S. 519, 520–21 (1972), the Court "cannot act as de facto counsel or rewrite an otherwise deficient [pro se] pleading to sustain an action," Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020). Indeed, "district courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff. By digging through a complaint in search of a valid claim, the courts 'would give the appearance of lawyering for one side of the controversy.'" Barmapov, 986 F.3d at 1328 (Tjoflat, J., concurring) (quoting Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1355 n.6 (11th Cir. 2018)).

The Amended Complaint is thus due to be dismissed as a shotgun pleading. Therefore, the Court will not reach Armor's other argument about whether Plaintiff fails to allege deliberate indifference. Because Plaintiff is proceeding pro se, the Court will give him another opportunity to file an adequate complaint. Accordingly, it is hereby **ORDERED:**

1. Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss (Doc. 30) is **GRANTED** to the extent that the Amended Complaint (Doc. 26) is **DISMISSED WITHOUT PREJUDICE** as a shotgun pleading. Otherwise, the Motion to Dismiss is **DENIED AS MOOT**.

2. Plaintiff must file a Second Amended Complaint no later than **April 22, 2022**, if he is to proceed with this action. Plaintiff must file the complaint on a civil rights complaint form and write "Second Amended Complaint" at the top. Because an amended complaint supersedes any prior complaint and becomes the operative pleading, the Second Amended Complaint must be complete and should not refer to the prior complaints in this case. Plaintiff must comply with all applicable rules and procedures when filing the Second Amended Complaint, including the Court's Local Rules and the Federal Rules of Civil Procedure.

3. If Plaintiff does not file a Second Amended Complaint by the above date, the case may be dismissed for lack of prosecution.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of March, 2022.

_____
BRIAN J. DAVIS
United States District Judge

lc 19
C:
Counsel of record
Pro se plaintiff