UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDREW A. ADORJAN,

        Plaintiff,

v.                                         Case No. 3:20-cv-1280-BJD-JBT

DUVAL COUNTY, et al.,

        Defendants.
_____

## **ORDER**

**I. Status**

Plaintiff, Andrew Adorjan, a former state inmate, is proceeding *pro se* and *in forma pauperis* on a Third Amended Complaint under 42 U.S.C. § 1983 (Doc. 78; Am. Compl.) based on conduct that occurred when he was housed at the Duval County Detention Center (DCDC) in Jacksonville, Florida.[1] Plaintiff names six Defendants: Duval County; former Sheriff Mike Williams; Armor Correctional Health Services, Inc.; and three John or Jane Doe medical

---

[1] The Court dismissed Plaintiff's Amended Complaint as a "shotgun" pleading, *see* Order (Doc. 43), and granted him leave to amend his Second Amended Complaint to include as Defendants the unknown individual medical providers who allegedly denied him medical care at the DCDC, *see* Order (Doc. 77). On April 21, 2023, in response to an Order directing Plaintiff to provide the names of the Doe Defendants, Plaintiff filed a notice contending he does not yet have that information (Doc. 84). Thus, the Court gave him an extension of time to provide the names. *See* Order (Doc. 85).

providers employed by Armor—a doctor, an ARNP, and an RN. *See* Am. Compl. at 2-4. He alleges Defendants violated his Fourteenth Amendment rights by denying or delaying medical care. *Id.* at 3, 8.

The three named Defendants, Duval County, Sheriff Williams, and Armor, move to dismiss Plaintiff's Third Amended Complaint (Doc. 81; Def. Mot.). Plaintiff opposes the motion (Doc. 87; Pl. Resp.).

## II. Motion to Dismiss Standard

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III. Complaint Allegations

Plaintiff alleges he was arrested on December 6, 2019, and officers took him to the emergency room at Shands Hospital before booking him because he

2

had recently fractured his left thumb and right wrist and was wearing a temporary splint. Am. Compl. at 8. The emergency room physician replaced his splint and released him with instructions to take Librium (a medication for alcohol withdrawal) and to be seen "urgently in the jail ortho clinic in 3 days for the needed medical treatment for his fractured bones."[2] *Id.*

In Count One, Plaintiff alleges Armor, the Doe Doctor, and the Doe ARNP failed to fill his Librium prescription, causing him to suffer "severe withdraw[a]l symptoms for an extended number of days." *Id.* at 9.

In Count Two, Plaintiff alleges Armor, the Doe Doctor, and the Doe ARNP did not send him to an orthopedist within three days as recommended by the Shands physician but rather delayed his follow-up appointment for forty-two days. *Id.* at 10. At his follow-up appointment, on January 17, 2020, the orthopedist allegedly told Plaintiff he should have been brought in sooner, and his wrist should have been placed in traction to help it heal properly. *Id.* Plaintiff asserts the delay directly violated Armor's "Policy & Procedures" statement, a copy of which he provides with his Third Amended Complaint. *Id.* at 10, 41-44. He alleges the failure to properly treat his broken bone resulted in his wrist becoming "deformed [and] dysfunctional." *Id.* at 10.

---

[2] Plaintiff asserts that the DCDC does not have an ortho clinic but rather sends inmates to Shands for such treatment. *See* Am. Compl. at 10.

In Count Three, Plaintiff alleges he slipped in a puddle of water three weeks after his arrival at the DCDC, which caused him "extreme pain" in his already fractured right wrist. *Id.* at 11. He contends he declared a medical emergency, and he was taken to the infirmary, but the Doe RN "never examined his [right] wrist" and did not notify the doctor on duty. *Id.* The Doe RN also allegedly denied his request for Ibuprofen to help alleviate his pain. *Id.*

In Count Four, Plaintiff alleges he filed grievances regarding his broken wrist and suggests Sheriff Williams was responsible for the alleged denial of or delay in treatment, as the "'over-all' supervisor of the DCDC." *Id.* at 12. Plaintiff says Sheriff Williams, as the "decision maker for the County of Duval . . . [had] a[n] unofficial custom of cutting costs whenever possible, so [as] to keep a set budget," and he imposed that custom of cutting costs on Armor. *Id.*

In Count Five, Plaintiff alleges Sheriff Williams is responsible for the "damages [caused by his] untreated fractured [right] wrist," and Duval County, through the General Counsel's Office, "has made and decrees a[n] unofficial custom . . . of cutting costs whenever possible." *Id.* at 13. He explains that Duval County operates the DCDC and allocates funds to the jail pursuant to contracts with medical providers like Armor to provide medical services for

4

inmates. *Id.* He alleges the custom of cutting costs "makes the DCDC medical [department] inadequate." *Id.* at 13-14.

Plaintiff provides medical and grievance records with his Third Amended Complaint. A Shands visit summary dated December 6, 2019, shows Plaintiff had x-rays of his left and right hands and wrists, had a splint applied, was given medications, and was given a prescription for Librium to be taken three times a day (two pills each time) for two days. *Id.* at 28-29, 40. Plaintiff submitted sick-call requests on December 9, 10, 15, 16, and 17, 2019, and on January 3, 9, and, 10, 2020, asking to be sent back to Shands for his splint to be replaced with a cast. *Id.* at 46-53. Some of the sick-call requests bear the signature of a nurse as having been received, but many do not. *See id.* On the December 10, 2019 sick-call form, a nurse (initials "S.H.") noted Plaintiff was scheduled to have an x-ray on December 12, 2019. *Id.* at 47. On the January 12, 2020 sick-call form in which Plaintiff complained about slipping in a puddle and possibly re-breaking his wrist, a nurse (last name possibly "Braswell") noted Plaintiff was already scheduled to be seen in sick-call that day. *Id.* at 53.

Plaintiff also submitted grievances complaining about "[n]ot being taken back to [the] hospital for [a] cast." *Id.* at 54-64. On January 13, 2020, a staff member responded as follows: "You were seen by the provider on 12/7/19 and again on 12/20/19; you were seen by the nurse for sick call on 1/5/20; you are

5

scheduled for follow up with the hospital; you will not know when you are scheduled to go out to the hospital, due to safety and security." *Id.* at 58.

## IV. Analysis

### A. Defendants' Motion to Dismiss

Defendants seek dismissal of the Third Amended Complaint on narrow grounds: they argue Plaintiff's complaint is a shotgun pleading, and he fails to state a constitutional violation. Def. Mot. at 3-5. Defendants contend Plaintiff alleges no more than "a state law tort claim for medical malpractice" and fails to allege causation because his "alleged [right wrist] injury did not even occur at the [DCDC], [but rather] occurred prior to his admission." *Id.* at 3-4. In his response, Plaintiff simply contends he "disagrees" with Defendants' arguments. *See generally* Pl. Resp.

### B. Deliberate Indifference

"Deliberate indifference to a prisoner's serious medical needs violates the eighth amendment because denying or delaying medical treatment is tantamount to 'unnecessary and wanton infliction of pain.'" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).[3] To state a claim, a plaintiff first must allege he had a serious

---

[3] As a pretrial detainee at the time of the events, Plaintiff's claims arise under the Fourteenth Amendment's due process clause, but "the standards [for deliberate

6

medical need. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). To sufficiently plead the deliberate-indifference element, "a plaintiff must [allege] that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than *gross* negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis in original). Finally, the plaintiff must allege facts showing a causal connection between the defendant's conduct and his resulting injuries. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care . . . or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). However, "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb."

---

indifference] under the Fourteenth Amendment are identical to those under the Eighth [Amendment]." *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

*Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). Deliberate indifference is much more stringent a standard than negligence or malpractice: it "is *not* a constitutionalized version of common-law negligence." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (emphasis in original) (quoting *Swain v. Junior*, 961 F.3d 1276, 1287-88 (11th Cir. 2020)). Stated another way, "[d]eliberate indifference is not about 'inadvertence or error in good faith,' but rather about 'obduracy and wantonness'—a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." *Stone v. Hendry*, 785 F. App'x 763, 769 (11th Cir. 2019)[4] (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

The Eleventh Circuit has recognized the following conduct may constitute deliberate indifference: knowing an inmate needs medical care but intentionally refusing to provide that care, *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985); providing care that is "so cursory as to amount to no treatment at all," *id.*; denying an inmate medication "for no reason at all," *Wade*, 67 F.4th at 1376; or ignoring a suspected broken bone, *Hughes*, 894 F.2d at 1537-38 ("With [a broken bone], it may be that deliberately indifferent delay, no matter how brief, would render defendants liable as if

---

[4] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

8

they had inflicted the pain themselves."). *See also Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994) ("A few hours' delay in receiving medical care for emergency needs such as broken bones . . . may constitute deliberate indifference.").

### C. Conclusions

First, the Court finds Plaintiff has resolved the pleading deficiencies that resulted in the dismissal of his Amended Complaint. *See* Order (Doc. 43) at 10-11 (identifying the pleading problems with Plaintiff's Amended Complaint). He separates his factual allegations into numbered paragraphs and clarifies which claims he pursues against each Defendant. In other words, it should not be difficult for Defendants to frame a responsive pleading. As such, Plaintiff's Third Amended Complaint is not due to be dismissed as a shotgun pleading.

Next, the Court is not convinced Plaintiff "plead[s] nothing more than negligence due to alleged improper medical treatment." *See* Def. Mot. at 4. Accepting as true that the Doe RN refused to physically examine Plaintiff's already-fractured wrist after he fell, what Plaintiff alleges is more akin to medical care that was "so cursory as to amount to no treatment at all." *See Ancata*, 769 F.2d at 704. *See also McElligott*, 182 F.3d at 1256-57 (recognizing that negligently diagnosing an injury is not deliberate indifference but ignoring a prisoner's need for "further diagnosis of and treatment for . . . severe

9

pain" may constitute deliberate indifference). Indeed, Defendants acknowledge Plaintiff's slip-and-fall incident on January 10, 2020, "could have led" to an injury to his already-injured right wrist, but they do not address Plaintiff's allegation that the Doe RN refused to examine his wrist. *See* Def. Mot. at 5. Moreover, accepting as true that other DCDC medical providers denied a necessary medication for no reason or unnecessarily delayed treatment for a broken bone, which caused Plaintiff pain and his wrist to become deformed, Plaintiff's allegations go beyond negligence. *See Wade*, 67 F.4th at 1376; *Brown*, 894 F.2d at 1537-38.

Because Plaintiff's Third Amended Complaint is not a shotgun pleading, and he alleges more than negligence, Defendants' Motion to Dismiss is due to be denied.[5]

## V. Conclusion

It is now

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 81) is **DENIED**.

---

[5] Plaintiff continues to allege Defendants had an unconstitutional policy or custom of "cost-cutting," but, aside from generally contending that all of Plaintiff's allegations are "conclusory," Defendants do not challenge Plaintiff's Third Amended Complaint on the ground that he fails to state a plausible claim against them on a theory of municipal or entity liability. *See generally* Def. Mot. Because Defendants do not raise the argument, the Court does not consider it.

2. Within **twenty days** of the date of this Order, Defendants must answer the Third Amended Complaint.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of October 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c: Andrew Adorjan
    Counsel of Record